**ALTER, GOLDMAN & BRESCIA, LLP**
Attorneys for Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 670-0030

BRUCE R. ALTER (0457)
DANA P. BRESCIA (0501)

UNITED STATES BANKRUPTCY COURT   **Hearing Date: February 8, 2007**
SOUTHERN DISTRICT OF NEW YORK   **Hearing Time: 10:00 a.m.**

---------------------------------------------------------x

In re:

                                     Chapter 11

AMY RUTH, INC.,                         Case No. 05-19025 (brl)

                 Debtor.

---------------------------------------------------------x

### NOTICE OF MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365 AND BANKRUPTCY RULES 2002 AND 6004 AUTHORIZING AND APPROVING (1) THE SALE OF DEBTOR'S ASSETS IN ACCORDANCE WITH THE ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND MORNING STAR RESTAURANT GROUP LLC, SUBJECT TO HIGHER AND BETTER BIDS AND (2) THE ASSUMPTION AND ASSIGNMENT OF DEBTOR'S REAL PROPERTY LEASE IN CONNECTION THEREWITH

**PLEASE TAKE NOTICE,** that upon the application (the "Application") of

Amy Ruth, Inc. (the "Debtor"), by its attorneys, Alter, Goldman & Brescia, LLP,

the undersigned will move this Court, before the Honorable Burton R. Lifland,

United States Bankruptcy Judge, at the United States Bankruptcy Court, One

Bowling Green, New York, New York 10004, on the 8th day of February, 2007 at

10:00 a.m. (the "Hearing Date"), or as soon thereafter as counsel may be heard,

for an Order authorizing and approving (1) the sale of Debtor's assets for the

purchase price of $475,000.00 in accordance with the terms as set forth in the

Asset Purchase Agreement between Debtor and Morning Star Restaurant Group

LLC dated as of January 8, 2007, a copy of which is annexed to the Application

as Exhibit "A", subject to higher and better bids as set forth in the Application and (2) the assumption and assignment of the non-residential real property lease dated November 15, 1998 between 101-115 West 166th Street Realty Corp. and Debtor for the premises known as 113 West 116th Street, New York, New York, pursuant to Bankruptcy Code Sections 363 and 365, together with such other and further relief as is just, proper and equitable under the circumstances.

**PLEASE TAKE FURTHER NOTICE** that the Application and the Exhibits thereto have been or will be filed at the office of the Clerk of the Bankruptcy Court at the address stated above and may be examined on the Courts website www.nysb.uscourts.gov/ (a PACER password and login are required) or may be obtained by contacting the undersigned in writing.

**PLEASE TAKE FURTHER NOTICE,** that objections, if any, to the relief requested in the Application must be made in writing, filed electronically with the Bankruptcy Court at the Bankruptcy Court's web address www.nysb.uscourts.gov with a copy delivered directly to Chambers, and served upon the undersigned so as to be received no later than three (3) days prior to the Hearing Date scheduled herein.

Dated: Harrison, New York
      January 11, 2007

                    Respectfully Submitted,
                    **ALTER, GOLDMAN & BRESCIA, LLP**
                    Attorneys for the Debtor
                    550 Mamaroneck Avenue, Suite 510
                    Harrison, New York 10528
                    (914) 670-0030
                    By:**/s/ Dana P. Brescia**
                      Dana P. Brescia (DB-0501)

**ALTER, GOLDMAN & BRESCIA, LLP**
Attorneys for Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 670-0030

BRUCE R. ALTER (0457)
DANA P. BRESCIA (0501)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**Hearing Date: February 8, 2007**
**Hearing Time: 10:00 a.m.**

-----------------------------------------------------------x

In re:

AMY RUTH, INC.,

                                  Debtor.

Chapter 11
Case No. 05-19025 (brl)

-----------------------------------------------------------x

### APPLICATION FOR AN ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365 AND BANKRUPTCY RULES 2002 AND 6004 AUTHORIZING AND APPROVING (1) THE SALE OF DEBTOR'S ASSETS IN ACCORDANCE WITH THE ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND MORNING STAR RESTAURANT GROUP LLC SUBJECT TO HIGHER AND BETTER BIDS AND (2) THE ASSUMPTION AND ASSIGNMENT OF DEBTOR'S REAL PROPERTY LEASE IN CONNECTION THEREWITH

**TO:    THE HONORABLE BURTON R. LIFLAND**
           **UNITED STATES BANKRUPTCY JUDGE**

      1.      On September 28, 2005 (the "Filing Date"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code").

      2.      Thereafter, the instant proceeding was referred to your Honor for administration under the Bankruptcy Code.

      3.      An Official Committee of Unsecured Creditors has not been appointed. A trustee or examiner has not been appointed.

      4.      The Debtor has continued in possession of its property and the

management of its business affairs as a Debtor and Debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5.    The Debtor submits this Application for authority to sell and assign substantially all of the Debtor's assets pursuant to sections 363 and 365 of the Bankruptcy Code.

6.    Debtor is engaged in the business of operating a retail restaurant with its only place of business at 113 West 116th Street, New York, New York (the "Premises"). Prior to the Filing Date, Debtor entered into an Agreement of Lease for the Premises, with 101-115 West 166th Street Realty Corp. ("Landlord"), as Landlord, dated November 15, 1998, for a term of ten (10) years to commence on November 15, 1998 and to end on November 14, 2008 (the "Lease"). By Order of this Court dated November 16, 2006, Debtor's time in which to assume or reject the Lease was extended through and including February 20, 2007. As of the Filing Date, Debtor owes the Landlord approximately $11,500.00 for pre-petition rent.

7.    Debtor has three (3) secured creditors. Upper Manhattan Empowerment Zone Development Corporation ("UMEZ") has a secured claim in excess of $500,000.00. The Internal Revenue Service has a secured claim of approximately $359,000.00 and New York State has a secured claim of approximately $636,000.00.

8.    Throughout this proceeding, Debtor has continued to operate at a profit. Monthly operating reports through November 30, 2006 show Debtor's cumulative net ordinary income since the Filing Date to be $273,029. Despite

Debtors profitability, due to the exorbitant amount of secured debt incurred by Debtor, it will be impossible for Debtor to fund a plan of reorganization through its operations alone.

9.  Debtor, its former accountants and bankruptcy counsel have made every attempt to sell the business by contacting sources in the finance and restaurant industries as well as business brokers.

10.  Unfortunately, no one was interested in purchasing the business for an amount sufficient to pay all of Debtor's obligations, as the business is simply not worth the amount which Debtor would need to recover through such sale to enable it to pay all of its debts.

11.  Contributing to the difficulty in selling the business, is the fact that the Lease for the Premises expires on November 14, 2008, providing any potential purchaser with a short period of time, less than two years, before it is faced with the possibility of having to relocate.

12.  Morning Star Restaurant Group LLC and Landlord have entered into a new lease arrangement for the Premises dated December 14, 2006 pursuant to which Morning Star Restaurant Group LLC assumes from Debtor the rights and obligations remaining for all the rest of the term of Debtor's Lease, Landlord consents to the assignment of the remaining term of the Lease from Debtor to Morning Star Restaurant Group LLC and the original term of the Lease is extended for a period of eight years ending on November 14, 2016 with a new rent beginning at $15,833.33 per month with annual increases of 3% each year thereafter.

13.     Debtor has negotiated a deal with Morning Star Restaurant Group LLC ("Purchaser") for the sale of certain of the assets associated with Debtor's operations, free and clear of all Encumbrances, as defined in their agreement, for a purchase price of $475,000.00. Debtor and Purchaser have entered into an Asset Purchase Agreement dated January 8, 2007 (the "Asset Purchase Agreement"), a copy of which is annexed hereto as Exhibit "A".

**The Asset Purchase Agreement**

14.     Specifically, the Asset Purchase Agreement provides as follows:

**Purchased Assets**

(1)     Purchaser shall purchase from Debtor, and Debtor shall sell, transfer, assign, convey and deliver to Purchaser, all of Debtor's right, title and interest in and to the Purchased Assets free and clear of all encumbrances, provided however that Debtor shall be entitled to retain copies of all books and records, in whatever form, included in the Purchased Assets.

(2)     Purchased Assets means all of the Debtor's right, title, and interest as of the Closing Date, as defined below, in and to the following:

a.  the Assigned Contracts consisting of the Lease Agreement between Debtor and Landlord for the Premises (the "Assigned Contracts");

b.  the Inventory & Equipment consisting of office computers, desks, cabinets, tables & chairs, audio equipment, cooking equipment, refrigerators, food & perishables;

c.  the Intellectual Property Rights consisting of the trademark Amy Ruth's ™, the name and likeness of Carl S. Redding, and such other trademarks, service marks, trade names, logos, emblems and indicia of origin as now or hereafter used by Amy Ruth in conjunction therewith to operate and promote Southern Cuisine full-service restaurants under the trademark Amy Ruth's ™ Restaurant brand and using the Proprietary Products; All of Amy Ruth, Inc. common law rights to the usage of the names "Amy Ruth" and "Amy Ruth's"; and all of Amy Ruth, Inc.'s rights in the

Amy Ruth's U.S. Trademark Registration; Application No. 78/685,685.; and

    d.   All business records relating of Amy Ruth, Inc.

(3)   On the Closing Date Debtor and Purchaser will execute an Assignment and Assumption Agreement for the Assigned Contracts, the Bill of Sale and Assumption Agreement, and the Intellectual Property Rights Assignment Agreement (collectively the "Ancillary Agreements").

(4)   From and after the Closing, Purchaser will assume and pay, perform, discharge and be responsible for (collectively the "Assumed Contracts") all obligations and liabilities of Debtor under or related to the Assigned Contracts which accrue from and after the Closing Date.

(5)   Purchaser shall not assume, pay, perform, discharge or be responsible for any of the obligations or liabilities of Debtor other than the obligations under the Assumed Contracts and liabilities assumed, incurred or created under the Ancillary Agreements which accrue from and after the Closing Date.

(6)   Except for the warranty of title and the other representations, warranties and covenants contained herein, the Purchased Assets are being sold "AS IS", "WHERE IS" and "WITH ALL FAULTS" but free and clear of Encumbrances, and Debtor expressly disclaims any and all other warranties both express and implied.

## Purchase Price

(7)   The purchase price for the Purchased Assets shall be an aggregate amount equal to $475,000.00, plus (i) all amounts necessary to cure defaults on all Assigned Contracts and to pay any actual or pecuniary losses that resulted from any defaults by Debtor, and less (ii) that amount of professional compensation fixed by the Bankruptcy Court in this case for payment to Alter & Goldman, attorneys for the Debtor, including allowances pursuant to Bankruptcy Code Section 503. The Purchase Price is to be paid as follows:

(a) $47,500.00 upon execution of the Asset Purchase Agreement;
(b) Balance of the Purchase Price less the Deposit and any

payment into the escrow account established under the Escrow Agreement on the Closing Date as set forth in the Asset Purchase Agreement.

## The Closing

(8)     The Closing of the purchase and sale of the Purchased Assets shall be held on the second Business Day after the date of entry of the final order by the Bankruptcy Court (the "Closing Date")

## Other Bids

(9)     Debtor will solicit bids ("Bids") from other prospective purchasers (collectively "Bidders") for the sale of the Purchased Assets. Debtor shall have the right to select the highest Bid or Bids (the "Superior Bid"), which will be solely determined by considering the total consideration to be received by Debtor.     Debtor will not consider bids for the Purchased Assets which contain a purchase price which is less then the Purchase Price set forth in the Asset Purchase Agreement.

(10)    A higher Bid will not be considered by Debtor unless such Bid is more than the sum of the Purchase Price set forth in the Asset Purchase Agreement as such amounts may be estimated in good faith by Debtor and any bids thereafter must be higher in increments at $5,000.00 than the then existing highest or better bid (as determined in the reasonable discretion of Debtor. ("Qualifying Bid");

(11)    If Debtor (i) determines that a Qualifying Bid (or Bids)(which is not Purchaser's Bid) is the Superior Bid, and (ii) executes a definitive agreement embodying such Superior Bid, Seller will pay to Purchaser a break up fee equal to 3% of the proposed purchase price (the "Breakup Fee"), which shall be paid by Debtor to Purchaser immediately upon receipt of a down payment or other monetary consideration from the entity providing the Superior Bid.

## Proceeds of Sale of Debtor's Assets

15.     Debtor owes its Landlord approximately $11,500.00 for pre-petition

rent.  If the sale of the Debtor's assets to Purchaser is approved Debtor will

assume the Lease with the Landlord, the Purchaser will pay Landlord its pre-petition arrears in the amount of approximately $11,500.00 in addition to the proceeds of the sale, and Debtor will assign the Lease over to Purchaser.

16.    Alter, Goldman & Brescia, LLP, Debtor's bankruptcy counsel, is the only professional retained in this case and their final fees and expenses, as approved by the Court, will be payable from the proceeds of sale, along with all other unpaid administrative expenses including post petition taxes.

17.    The balance of the Purchase Price will be paid to Debtor's secured creditors in the priority as set forth in the provisions of the Bankruptcy Code. It is Debtor's belief that all funds will be paid to UMEZ, as they appear to have the first secured recorded lien.

18.    If the sale of the Debtor's assets to Purchaser is approved, Debtor intends to seek dismissal of its bankruptcy proceeding. Debtor's sole principal, Carl Redding, is aware that he will end up with personal liabilities in connection with the unpaid portion of Debtor's debt.

19.    The remaining funds in Debtor operating account will also be used to pay its administrative debts. Any surplus after such debts are paid will be turned over to Debtor's secured creditors.

20.    At the time Debtor and Purchaser entered into the Asset Purchase Agreement it was and continues to be the best available offer to purchase. As of the date hereof, Debtor's counsel has received the contract deposit of $47,500.00 and such amount is being held by them in a separate interest bearing escrow account.

## Relief Requested

21.    Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, as follows:

"The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."

22.    Pursuant to Section 363 of the Bankruptcy Code, the Debtor seeks entry of an order authorizing the Debtor to sell, assign and transfer the Purchased Assets on an "as is", "where is", "with all faults" basis pursuant to a sale to be held by the Debtor at the hearing requested herein, free and clear of all liens, claims, encumbrances, but with such liens, claims and encumbrances, if any, to attach to the proceeds of the sale.

23.    The Debtor believes that the Purchase Price for the sale of the Debtor's assets in this manner is in the best interests of the Debtor's estate and its creditors, for a variety of reasons, including the following:

(a)    The Debtor requires an immediate sale of the assets, for the reasons set forth above;

(b)    The Debtor has vigorously attempted to sell the business and this offer to purchase the Debtor's assets is and remains the best offer to date;

(c)    The proceeds will be used to satisfy the claim of the Landlord and will provide some recovery to Debtor's secured creditors, who would recover substantially less absent the sale. All administrative expense creditors will be paid in full.

24.     There are no broker fees in connection with this transaction.

**Terms of the Sale**

25.     The sale of the Debtor's assets to the Purchaser is subject to higher and better Bids.

26.     Any other Bid must be for the identical assets which Purchaser is buying, including the assumption and assignment of Lease and must be purchased subject to the same terms and conditions as set forth in the Asset Purchase Agreement.

27.     The Break Up Fee provided for in the Asset Purchase Agreement is 3% of the proposed purchase price. In order to be a Qualifying Bid, the amount of $14,250.00 plus $5,000.00 must be added on to the current Purchase Price of $475,000.00. Therefore a Qualifying Bid must be no less than $494,250.00 and must also cure all defaults under the assigned contracts.

28.     Only Qualified Bidders shall be permitted to place bids at the hearing on this matter. A Qualified Bidder must satisfactorily evidence the ability to make payment of the full purchase price and must deposit ten percent (10%) of the purchase price (including the amount necessary to pay all pre-petition rent arrears) within twenty four (24) hours of their approved bid and must be ready to close in accordance with the Agreement.

**Requirements for Pre-Confirmation Sale**

29.     The sale of substantially all of the assets of a debtor's estate may occur through a plan or reorganization. See 11 U.S.C. Section 1125(a)(5)(B). Aside from the procedural requirements of section 363 of the Code and Rule

6004 of the Federal Rules of Bankruptcy Procedure, a pre-confirmation sale of substantially all of a Chapter 11 Debtor's assets shall be approved if the proponent of the sale establishes that:

(a) a sound business reason exists to conduct the sale outside of the ordinary course of business;

(b) accurate and reasonable notice of the sale will be given to all required parties;

(c) there has been adequate marketing of the property and the price to be paid is fair; and

(d) the sale is the product of "good faith", arms-length negotiations See In re Wilde Horse Enterprises, Inc. 136 B.R. 830,841 (Bankr. C.D. Cal 1991); In Re Sovereign Estates, Ltd., 104 B.R. 702,704 (Bank. E.D.Pa. 1989), citing In re Industrial Valley Refrigeration and Air Conditioning Supplies, 77 B.R. 15 (Bankr. E.D. Pa. 1987). As set forth above, a sale will be permitted prior to confirmation where sound business justification exists. See In re Lionel Corp., 722 F. 2d 1063, 1070 (2d Cir. 1983)(a "good business reason" is required for a sale outside a plan of reorganization).

30. The cases state that valid justification exists if the asset is declining in value or if the assets have been extensively shopped and delay would jeopardize a transaction with one of the very few serious bidders. In re Thomson McKinnon Sec. Inc., 120 B.R. 301 (Bankr. S.D.N.Y. 1990)(declining value of assets is justification for immediate sale); In re Ionosphere Clubs, Inc. & Eastern Air Lines, Inc., 100 B.R. 670 (Bank. S.D.N.Y. 1989)(same); In re Crowthers

<u>McCall Patter, Inc.</u>, 114 B.R. 877, 855 (Bank. S.D.N.Y. 1990)(extreme difficulty finding a buyer justified merger when buyer found, so long as there is no impairment in Chapter 11 protections.)

31. All of the requirements for a pre-confirmation sale have been satisfied inasmuch as (i) sale of Debtor's assets have been actively marketed prior to and since the Filing Date; (ii) Debtor will not be able to fund a plan of reorganization through its operations alone, (iii) to date Purchaser is the best potential purchaser and Purchaser has entered into the Asset Purchase Agreement; and (iv) a delay of the sale of the Debtor's assets would jeopardize the sale of the Debtor's assets to the detriment of the Debtor's secured creditors. Pursuant to Bankruptcy Rules 2002 and 6004, the Debtor shall provide notice of the Hearing by serving a copy of the Notice of Motion, Application and exhibits upon (i) the Landlord and its counsel; (ii) all parties asserting a secured interest in the Debtor's property; (iii) the Debtor's taxing authorities; (iv) all parties filing notices of appearance; (v) the United States Trustee; and (vi) all parties who have previously expressed an interest in acquiring any of the Debtor's assets; and by serving a copy of the Notice of Motion without Application and exhibits upon all other creditors, which the Debtor submits constitutes good and sufficient notice of the proposed sale.

**Assumption and Assignment of the Lease**

32. The Debtor proposes, as part of the sale, to assume and assign the

Lease. The Debtor submits that the assumption and assignment of the Lease is reasonable and proper under the circumstances and should be approved as part of the sale of Debtor's assets.

33. The Debtor is current on all post petition obligations under the Lease. Debtor owes Landlord pre-petition rent in the amount of approximately $11,500.00 and Landlord is holding as a security deposit in the amount of $14,000.00.

34. Pursuant to Bankruptcy Code Section 365(a), the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the Debtor.

35. Bankruptcy Code Section 365(b)(1) states:

> *If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee-*
>
> i. *cures, or provides adequate assurance that the trustee will promptly cure, such default;*
>
> ii. *compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and*
>
> iii. *Provides adequate assurance of future performance under such contract or lease.*

36. Upon approval of the sale of the Purchased Assets to Purchaser, Purchaser is prepared to and will pay Landlord the amount owed to it for pre-petition rent from the proceeds of the sale.

37.     Upon receipt by the Landlord of approximately $11,500.00, Debtor has cured its pre-petition rent obligation.  As part of the sale of the Debtor's assets to Purchaser, Purchaser is entitled to any unused portion of the security deposit held by Landlord, which Debtor believes to be $14,000.00.

38.     Therefore, the Landlord will continue to hold $14,000.00 as adequate assurance of future payments.  The current monthly rent for the Premises pursuant to the Lease is $12,479.00.

39.     Debtor submits that the assumption of its Lease is in its best interest as the assumption and assignment of such Lease is an essential element to the Asset Purchase Agreement. Unless the Purchaser is able to utilize the Premises, they are not interested in purchasing the other assets.

40.     Given the nature of the relief requested herein and in light of the case law presented herein; the Debtor further respectfully requests that this court dispense with the submission of a memorandum of law in support of the motion.

41.     No previous request for the relief sought herein has been made to this or any other court.

**[Intentionally Left Blank]**

**WHEREFORE**, Debtor requests entry of an order (a) authorizing

and approving the sale of it's assets in accordance with the Asset Purchase

Agreement between Debtor and Morning Star Restaurant Group LLC; (b)

authorizing and approving assumption and assignment of the Lease in

connection with the proposed sale; and (c) Such other and further relief as this

court deems just and proper.

Dated: Harrison, New York
     January 11, 2007

ALTER, GOLDMAN & BRESCIA, LLP
By: **/s/ Dana P. Brescia**
    Dana P. Brescia (DB-0501)
    550 Mamaroneck Avenue
    Suite 510
    Harrison, New York 10528
    (914) 670-0030